IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YORKTOWN INDUSTRIES, INC., d/b/a/ CONCORD SUPPLIES, and YORKTOWN INDUSTRIES INDIANA, INC., | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 19 CV 2413 |
| v. | ) ) | Consolidated Case No. 19 CV 3928 |
| ASTER GRAPHICS, INC., | ) ) ) | |
| Defendant. | ) ) | Magistrate Judge Jeffrey I. Cummings |
| ASTER GRAPHICS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| YORKTOWN INDUSTRIES, INC. d/b/a CONCORD SUPPLIES, and KENNETH REICK, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendant Aster Graphics, Inc.'s ("Aster") motion to compel. (Dckt. #111). For the reasons set forth below, Aster's motion is granted in part and denied in part.

**I. BACKGROUND**

These consolidated cases arise out of a supplier agreement between Yorktown Industries, Inc. d/b/a Concord Supplies and Yorktown Industries Indiana, Inc. (collectively "Yorktown" unless otherwise noted) and Aster, whereby Aster agreed to provide toner cartridges to Yorktown

at the lowest offered price. The supplier agreement, entered into between the parties on November 17, 2011, provided, in relevant part:

> **Pricing.** Supplier [Aster] agrees that Yorktown has been given the most favored customer status ("MFC") with regard to the pricing set forth in this order. MFC means a customer(s) of Supplier who receives terms and conditions . . . that are more favorable than those received by any other similarly situated Supplier customer. If Supplier offers more favorable terms and conditions to any other customer than are offered to Yorktown under this order, then Supplier will concurrently extend those terms and conditions to Yorktown . . . Any amounts charged to Yorktown in excess of prices offered by Supplier to any other similarly situated customer for goods and services will promptly be refunded or credited to Yorktown by Supplier . . .

(Dckt. #16-1 at 4).

According to the allegations of Yorktown's amended complaint, (Dckt. #16), at some point after the fall of 2018, Yorktown had discussions with Bob Wilmes, owner of Supplies Wholesale/Supplies Outlet. Wilmes informed Yorktown that he was purchasing similar products from Aster "at a rate of 25% or more lower" than Yorktown. (Dckt. #16 at 3). Yorktown then brought this action for breach of contract based on Aster's purported violation of the pricing requirement to offer prices at the MFC rate.

Separately, Aster filed its own complaint for breach of contract – since consolidated here – alleging that Yorktown failed to pay for all of the products it received from Aster. (*See* 19-cv-3928 at Dckt. #3-5). Aster brings its claim against Yorktown and its owner Kenneth Reick ("Reick") under an alter ego theory.

Discovery is ongoing and the parties have been proceeding with written discovery. Notwithstanding their meet and confer efforts, the parties reached an impasse regarding certain of Yorktown's responses to Aster's interrogatories and requests for production ("RFPs") and the instant motion followed. Aster asks the Court to compel Yorktown to respond to certain interrogatories and RFPs related to: (1) Yorktown's other suppliers; (2) Yorktown's

communications with Aster's customers; (3) Yorktown's customers and sales of toner cartridges; and (4) Yorktown's corporate structure. The Court addresses each category of requests in turn below.

## II. ANALYSIS

### A. Standard on a Motion to Compel

A party may file a motion to compel under Federal Rule of Civil Procedure 37 whenever another party fails to respond to a discovery request or when its response is insufficient. Fed.R.Civ.P. 37(a). Courts have broad discretion in resolving such discovery disputes and do so by adopting a liberal interpretation of the discovery rules. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996); *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D.Ill. 2018). Rule 26 provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed.R.Civ.P. 26(b)(1); *see Motorola Sols., Inc. v. Hytera Communications Corp.*, 365 F.Supp.3d 916, 924 (N.D.Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter"). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed.R.Civ.P. 26(b)(1).

With this standard in mind, the Court turns to each of the categories of Aster's discovery requests in dispute.

### B. Information and documents related to Yorktown's agreements with other suppliers are relevant to Yorktown's breach of contract claim and are discoverable.

In Interrogatory Nos. 21-23 and RFP Nos. 18-19 and 21-24, Aster seeks information regarding Yorktown's *other* suppliers of toner cartridges, specifically asking Yorktown to:

3

- Identify any other suppliers of toner cartridges to Yorktown, (Int. No. 21), and identify all suppliers that have agreed to provide Yorktown most favored customer ("MFC") status, (Int. No. 22);

- Produce all agreements between Yorktown and any other suppliers of toner cartridges, (RFP No. 18), and all documents relating to the terms of sale (including but not limited to pricing) of toner cartridges offered by any other suppliers, (RFP No. 19);

- Produce all agreements and communications between Yorktown and any other supplier in which the supplier agreed to give Yorktown MFC status, (RFP Nos. 21 & 22);

- Produce all communications between Yorktown and any other suppliers relating to whether Yorktown is a similarly situated customer to any other customer of that supplier, (RFP No. 23); and

- Describe and produce any documents related to Yorktown's effort to enforce any agreement of MFC status against any other supplier, (Int. No. 23 & RFP No. 24).

According to Aster, information and documents related to Yorktown's other suppliers are "fundamental to the issues in this case," because Yorktown's claim for breach of contract turns on the enforcement and interpretation of contract terms, including "most favored customer" and "other similarly situated Supplier customer." (Dckt. #111 at 6). Yorktown initially objected to these requests as seeking proprietary and/or irrelevant information and continues to argue in its response brief that the requests seek information wholly irrelevant to the issues in this case. The Court disagrees, as these requests seek discoverable parol evidence relevant to Yorktown's breach of contract claim.[1]

Illinois courts adhere to the "four corners rule of contract interpretation, which provides that '[a]n agreement, when reduced to writing, must be presumed to speak the intention of the

---

[1] Aster does not explicitly argue that these requests seek potential parol evidence, but this position appears implicit in its contention that Yorktown's breach of contract claim turns on the enforcement and interpretation of the contract terms. (Dckt. #111 at 6).

parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used.'" *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 878 (7th Cir. 2005), *quoting Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999)). As such, if the contract's language is "clear and unambiguous," the court will not consider extrinsic (or parol) evidence. *CNC Sols. & Eng'g, LLC v. Korloy Am., Inc.*, No. 21 C 05651, 2022 WL 4608909, at *2 (N.D.Ill. Sept. 30, 2022) (citing *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 993 (7th Cir. 2007)). If, however, "the contract is ambiguous, as a matter of law, then extrinsic and parol evidence is admissible to explain the terms of the ambiguous contract." *Carolina Cas. Ins. Co. v. Merge Healthcare, Inc.*, No. 11 C 3844, 2011 WL 5589291, at *1 (N.D.Ill. Nov. 16, 2011), *quoting Sunstream Jet Express, Inc. v. Int'l Air Serv. Co., Ltd.*, 734 F.2d 1258, 1265 (7th Cir. 1984). Specifically:

> [P]arol evidence may be admissible to show the background and purpose of the parties and the circumstances in which the agreement was negotiated, as well as the practical construction placed on the agreement by the parties themselves, to assist the court in construing unclear language and resolving uncertainties in applying the agreement to a particular subject matter.

*Carolina*, 2011 5589291 at *1.
!
Here, where Yorktown's potential for recovery turns in part on the meaning of the terms "most favored customer" and "other similarly situated Supplier," Aster's requests for information and documents related to Yorktown's agreements with other suppliers – containing the same terms – seek relevant parol evidence regarding the interpretation of those terms.

Moreover, it is of no moment that the Court has not yet determined, as a matter of law, whether the supplier agreement at issue is in fact ambiguous and requires the consideration of extrinsic evidence outside the four corners of the document. The "parol evidence rule is a rule of substantive law and not of evidence." *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F.Supp.2d 399,

5

404 (E.D.N.Y. 2011) (internal quotation and citation omitted). It follows then that where – as here – "a party asserts that extrinsic evidence is necessary only to explain the meaning of the language employed in a provision of an agreement . . . it is not clear error or contrary to law to allow some discovery on the issue rather than to preclude the development of this potential claim and/or defense." *Id.*; *Ferro v. Atl. City Showboat, Inc.*, No. CV 08-375 (JBS/JS), 2009 WL 10690439, at *2 (D.N.J. July 13, 2009); ("[I]n a case where the question of ambiguity in the contract has not yet been resolved, extrinsic evidence is relevant and discoverable under the federal rules.").

Furthermore, discovery under Rule 26 "is not limited to admissible evidence, [and] therefore it is inappropriate to deny discovery of parol evidence simply because it may be inadmissible at trial." *Ferro*, 2009 WL 10690439, at *2; *see also In re Caesars Ent. Operating Co., Inc.*, No. 15 B 1145, 2018 WL 2431636, at *5 (Bankr.N.D.Ill. May 29, 2018) (noting that the potential for inadmissibility "does not push the documents [the movant] requests beyond the scope of discovery."). Accordingly, this Court – like many others – will permit Aster to take discovery into relevant parol evidence. *See e.g.*, *Carolina Cas. Ins. Co.*, 2011 WL 5589291, at *1-2; *Garcia*, 800 F.Supp.2d at 405; *Wachovia Fin. Servs., Inc. v. Birdman*, No. 09-81252-CIV, 2010 WL 11506043, at *5 (S.D.Fla. Oct. 19, 2010).

Lastly, any concerns regarding the proprietary nature of Yorktown's agreements with its other suppliers are allayed by the confidentiality order, (Dckt. #65), already in place in this matter. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 CV 0864, 2018 WL 6413199, at *3 (N.D.Ill. Dec. 6, 2018), *objections overruled*, No. 18 CV 864, 2019 WL 11583408 (N.D.Ill. Apr. 25, 2019) (allowing relevant discovery where the confidentiality order was adequate to protect privacy interests).

For these reasons, Aster's motion to compel further responses to Interrogatory Nos. 21-23 and RFP Nos. 18-19 and 2124 is granted.[2]  Yorktown shall fully respond to these requests by October 27, 2023.

### C. Yorktown's communications with Aster's other customers regarding pricing are relevant to Yorktown's breach of contract claim and are discoverable.

Aster also seeks all communications between Yorktown and any current or former customer of Aster, (RFP No. 25), and all documents – not already produced by Aster – relating to pricing offered by Aster to its other customers, (RFP No. 26).  Yorktown objects to these requests as overly broad, unduly burdensome, and as seeking proprietary and irrelevant information.  With one exception as to scope, the Court disagrees.

To begin, Yorktown's communications with Aster's other customers regarding pricing is undoubtedly relevant to its claim for breach of contract.  Indeed, Yorktown itself has alleged that it learned of Aster offering more favorable pricing to its other customers through conversations with one of those customers, *i.e*., Bob Wilmes of Supplies Wholesale/Supplies Outlet.  Thus, other such communications may tend to show which of Aster's other similarly situated supplier customers, if any, may have been offered lower pricing by Aster in purported breach of the supplier agreement.

Furthermore, beyond its boilerplate objection, Yorktown has not elaborated as to any undue burden it may face in producing such communications.  *See Sols. Team v. Oak St. Health, MSO, LLC*, No. 17 CV 1879, 2021 WL 3022324, at *4 (N.D.Ill. July 16, 2021) ("A party resisting discovery on the basis of undue burden must show with specificity that the discovery requests at issue are objectionable.") (internal quotation and citation omitted).  And, again, any

---

[2] Aster also included Interrogatory No. 20 in its request for relief, but did not substantively include that request in its motion in the context of other supplier information or otherwise.  Accordingly, Aster's request to compel is denied with respect to Interrogatory No. 20.

7

concerns regarding the confidentiality of such communications and documents will be alleviated by the confidentiality order already in place, *see supra* at Section II(B).

As written, however, the Court does agree that these requests are not properly narrowed in scope, and further narrows the requests as follows:

> RFP No. 25: All communications, *from November 17, 2011 to the present*, between Yorktown and any current or former customer of Aster *relating to pricing offered by Aster to its other customers for toner cartridges.*
>
> RFP No. 26: All documents, *from November 17, 2011 to the present*, relating to pricing offered by Aster to its other customers (other than the documents produced by Aster in the Lawsuit) *for toner cartridges*.

Aster's motion to compel is granted with respect to RFP Nos. 25 and 26, as narrowed, and Yorktown shall fully respond by October 27, 2023.

### D. Information and documents relating to Yorktown's sale of toner cartridges, including pricing, are relevant to Aster's affirmative defense of failure to mitigate.

In Interrogatory No. 19 and RFP Nos. 15-17, Aster asks Yorktown to describe how it solicits customers and orders for toner cartridges, (Int. No. 19), and seeks documents sufficient to identify: Yorktown's customers, (RFP No. 15), terms of sale, (RFP No. 16), and prices paid for toner cartridges, (RFP No. 17). Yorktown objects to these requests as seeking proprietary and irrelevant information. Contrary to Yorktown's position, the Court finds that these requests seek both discoverable parol evidence and information relevant to Aster's affirmative defense of failure to mitigate damages.

First, as Aster notes, information regarding Yorktown's customers and order history may illustrate where Yorktown is "situated in the overall sales channel" and could prove relevant parol evidence as to the interpretation of "other similarly situated Supplier customers." (Dckt. #119 at 5). As discussed above, *supra* at Section II(B), such parol evidence is discoverable.

8

Moreover, information regarding Yorktown's sales of toner cartridges is relevant to Aster's affirmative defense of failure to mitigate. The duty to mitigate damages "forbids the victim of a breach of contract, which might well be involuntary, to allow his damages to balloon (when he could easily prevent that from happening), as he might be tempted to do in order to force a lucrative settlement." *Moran Foods, Inc. v. Mid–Atlantic Market Development Co.*, LLC, 476 F.3d 436, 440 (7th Cir. 2007). Under Illinois law, mitigation of damages is an affirmative defense on which the defendant bears the burden of proof. *Ner Tamid Congregation of N. Town v. Krivoruchko*, 638 F.Supp.2d 913, 919 (N.D.Ill. 2009) (citing *Ellis v. Sheahan*, 412 F.3d 754, 756 (7th Cir. 2005)). "To sustain the defense the defendant must demonstrate that the plaintiff failed to exercise reasonable diligence and ordinary care in attempting to minimize the damages after injury has been inflicted." *Ner Tamid*, 638 F.Supp.2d at 913 (internal quotation and citation omitted).

Here, having pled the affirmative defense of failure to mitigate, Aster is entitled to discovery regarding that defense, for which it bears the burden of proof. *See e.g.*, *Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 510-12 (D.Nev. 2020) (allowing discovery relevant to the affirmative defense of failure to mitigate where that defense remained "live"); *Cohn v. Taco Bell Corp.*, No. 92 C 5852, 1994 WL 383983, at *3 (N.D.Ill. July 20, 1994) ("Even if there are no expected profits and thus no actual mitigation of damages, the discovery sought is still relevant to Plaintiffs' duty to mitigate their damages"). However, because "the duty to mitigate damages does not arise until the party upon whom the duty is impressed is aware of facts which make the duty to mitigate necessary," *Straits Fin. LLC v. Ten Sleep Cattle Co.*, 900 F.3d 359, 375 (7th Cir. 2018), the Court will limit these requests from September 1, 2018 to the

9

present because Yorktown has alleged it only became aware of the breach at some point during or after the "fall of 2018." (Dckt. #16 at 3).

For these reasons, Aster's motion to compel is granted with respect to Interrogatory No. 19 and RFP Nos. 15-17, as narrowed, and Yorktown shall fully respond by October 27, 2023.

> E. **Information and documents relating to the Yorktown entities' finances and corporate structure are relevant to Aster's alter ego claim and are discoverable.**

Lastly, in Interrogatory No. 29 and RFP Nos. 30-46, Aster seeks a broad range of information and documents related to the finances and corporate structure of the Yorktown entities (both Concord and Yorktown Indiana). According to Aster, these requests are relevant to its claim that Yorktown is the alter ego of Kenneth Reick. Yorktown responds that any discovery related to Aster's alter ego claim is premature, given that Aster has not yet obtained a judgment against Yorktown. Respectfully, the Court disagrees.

The alter ego theory (or piercing the corporate veil) is relevant to establishing whether liability attaches to a given party. *Pain Ctr. of SE Indiana, LLC v. Origin Healthcare Sols. LLC*, No. 1:13-CV-00133-RLY, 2014 WL 958464, at *3 (S.D.Ind. Mar. 12, 2014). As such, "numerous courts address the alter ego issue as part of the underlying case," *Id*. (collecting cases), and they have "reject[ed] [the] argument that discovery related to piercing the corporate veil is only a post-judgment matter." *Hunter v. WirelessPCS Chicago LLC*, No. 18 CV 980, 2021 WL 4621889, at *3 (N.D.Ill. Oct. 5, 2021) (citing *Mobimeds, Inc. v. E-MedRx Sols., Inc.*, No. 19-CV-3224, 2021 WL 3264408, at *3-4 (C.D.Ill. July 30, 2021)); *Watchfire Signs LLC v. Catalyst Outdoor Advert. LLC*, No. 21-CV-2128, 2022 WL 18539346, at *3 (C.D.Ill. July 28, 2022) ("[A] plaintiff may seek initial discovery relating to its claims to pierce the corporate veil. There is no need to wait for the post judgment stage."); *see also Pain Ctr. of SE Indiana*, 2014

WL 958464, at *3 (noting that "there is no hard and fast rule governing discovery in cases involving an alter ego theory of liability.").[3]

Here, within its discretion, the Court will allow Aster to proceed with discovery relevant to its alter ego claim because it brought that claim in its initial complaint *and* discovery related to that claim has not otherwise been bifurcated or stayed. "Illinois courts have repeatedly held that documents showing the organizational structure, meeting minutes, documents related to intercompany loans, bylaws, articles of incorporation, balance sheets, statements, and other documents showing whether funds are commingled and/or whether corporate defendants are adequately funded are relevant to veil piercing allegations." *Watchfire Signs LLC v. Catalyst Outdoor Advert. LLC*, No. 21-2128, 2023 WL 4843996, at *2 (C.D.Ill. June 21, 2023); *McComas v. Mkt.*, No. CV 16-217-WOB-CJS, 2020 WL 12698021, at *8 (E.D.Ky. Nov. 30, 2020) ("Factors relevant to a finding of alter ego status for discovery purposes includes whether the enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership.").

On the whole, Aster's discovery requests are directed towards factors that are relevant to the alter ego issue. In consideration of these factors, the Court grants Aster's motion to compel with respect to the following requests, all of which are appropriately tailored to the alter ego issue as it relates directly to Reick, Concord, and Yorktown Indiana: Int. No. 29 & RFP No. 46 (seeking the identification and documents related to corporate bank accounts); RFP Nos. 30, 31 & 32 (seeking documents related to any corporate dissolution); RFP Nos. 33 & 34 (seeking documents to show corporate capitalization); RFP Nos. 35 & 36 (seeking corporate federal and

---

[3] Yorktown's reliance on *Lange v. Misch*, 598 N.E.2d 412 (Ill.App. 1992) and *Pyshos v. Heart-Land Dev. Co.*, 630 N.E.2d 1054 (Ill.App. 1994) is misplaced. While those cases address post-judgment attempts to pierce the corporate veil, they do not preclude a party from asserting such a claim at the outset and proceeding with pre-judgment discovery related thereto.

11

state tax returns); RFP Nos. 37 & 38 (seeking documents evidencing the maintenance and observation of corporate formalities); and RFP Nos. 41, 42 & 45 (seeking documents related to how Concord and Yorktown compensate Reick and any other transfers of money/assets between them). *See Mobimeds*, 2021 WL 3264408, at *5-19 (permitting similar alter ego related discovery requests related to corporate structure, capitalization, governance, financial and banking statements, tax returns, and transfers between the corporation and the CEO). With respect to RFP Nos. 39 and 40 (seeking leases executed by Concord and Yorktown Indiana), the Court limits those requests to leases executed between Concord, Yorktown Indiana, and Reick, or any other entity in which Reick has an ownership interest. *See Mobimeds*, 2021 WL 3264408, at *5 (similarly narrowing such a request because "leasing property to or from unrelated entities would not be relevant [to the alter ego claim]").

Finally, Aster's motion is denied with respect to RFP Nos. 43 and 44 – seeking documents related to how Concord and Yorktown Indiana compensate employees or contractors other than Reick – as those requests are not appropriately tailored to the alter ego issue.

For these reasons, Aster's motion to compel is granted with respect to Interrogatory No. 29 and RFP Nos. 30-42, 45-46, and Yorktown shall fully respond by October 27, 2023. Aster's motion is denied with respect to RFP Nos. 43-44.

## CONCLUSION

For the foregoing reasons, Aster's motion to compel, (Dckt. #111), is granted in part and denied in part. Yorktown shall fully respond to the discovery requests outlined above by October 27, 2023.

**DATE: October 5, 2023**

**Jeffrey I. Cummings**
**United States Magistrate Judge**